**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JAMARS HORACE LEE, by and :
through his next friend, :
WINIFRED A. DANIELS :
:
    Plaintiff, : CIVIL ACTION NO.
: 1:09-CV-2271-RWS
v. :
:
MARILYN MCCREARY, :
DEKALB COMMUNITY :
SERVICE BOARD, WILLOW :
RIDGE APARTMENTS, :
:
    Defendants.

## **ORDER**

This case comes before the Court for the purpose of a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B) and on Plaintiff's Motion to Appoint Counsel [4]. After reviewing the record, the Court enters the following order.

### **Background**

This action is brought on behalf of Plaintiff by Winifred A. Daniels, who has power of attorney authority for Plaintiff. (Complaint, Dkt. No. [2], at 1).[1]

Plaintiff is currently proceeding *pro se* and has been allowed to proceed *in*

---

[1] The caption of the case has been amended to reflect that the action is brought by Winifred A. Daniels, as Mr. Lee's next friend under his power of attorney.

*forma pauperis*. (Order of August 19, 2009, Dkt. No. [3]). Plaintiff is an adult resident of DeKalb County, Georgia and resides in a semi-independent residential services program for individuals with disabilities. (Id. at ¶ 5). Plaintiff suffers from schizophrenia and has been diagnosed with this condition for at least nine years, and perhaps since 1995. (Id. at ¶¶ 5, 6). Plaintiff states that schizophrenia interferes with "a person's ability to think clearly, to distinguish reality from fantasy, to manage emotions, make decisions, and relate to others . . ." (Id. at ¶ 6).

Plaintiff lived in apartment unit number 600 ("Unit") at Defendant Willow Ridge Apartments ("WRA"), located in DeKalb County, Georgia. While it is not clear from the Complaint, it appears that Defendant DeKalb Community Service Board ("DCSB") arranged for Plaintiff's apartment at WRA. Defendant Marilyn McCreary is alleged to be DCSB's director of residential services. DCSB "is a public, not-for-profit organization that helps children, adolescents, adults and seniors who suffer from mental health, developmental disabilities and addiction challenges . . . live more full and productive lives." (Id. at ¶ 7). Plaintiff alleges that DCSB was aware of Plaintiff's mental impairment and extended its services to him on the basis of that disability. (Id.).

2

Plaintiff brings this action as a result of numerous problems he encountered while living in the Unit. Problems in the Unit included the presence of mold and mildew, damp carpets, leaking water, a foul order, a dysfunctional air conditioning system, and the presence of deceased and living rats and their excrement. (Id. at ¶¶ 25, 36, 38). Starting at least as early as April 4, 2007 and continuing until Plaintiff was moved to another apartment unit on April 9, 2008, Daniels submitted numerous requests to Defendants via email, phone, fax, and certified mail, seeking remediation of these deficiencies. (Id.). Plaintiff alleges that Defendants refused to fix the problems in the Unit and only began to take remedial steps after the U.S. Department of Housing and Urban Development ("HUD") and the DeKalb County Police Department Code Enforcement Division ("CED") were notified. (Id. at ¶¶ 21, 50). Plaintiff also alleges that Defendants failed to perform certain services that they were obligated by agreement or law to perform for Plaintiff to assist him in living with his disability. (Id. at ¶¶ 54, 69).

On October 16, 2007, Plaintiff filed a complaint with HUD alleging that Defendants engaged in malicious discriminatory housing practices and refused to take reasonable actions to accommodate Plaintiff's disability. (Id. at 20). HUD investigators conducted an investigation and attempted conciliation

3

without success. (Id. at 90). A final investigative report was prepared but it is not in the record and any findings or conclusions in the report are unknown to the Court. (Id.).

On October 24, 2007, Daniels called CED to complain about the condition of Plaintiff's apartment. (CED Report, Complaint, Ex. 1, Dkt. No. [2-2] at 2[2]). CED conducted an inspection of the Unit on January 24, 2008, noted several deficiencies, and provided WRA with a deadline to remedy the problems. (Id. at 4). CED specifically noted that: the Unit needed to be treated for rodents; waste material and germicide needed to be removed from the Unit; openings allowing in rodents needed to be secured; damage to the exterior surface of the Unit needed to be repaired; the mold problem needed to be remedied; and the air conditioning unit needed to be repaired. (Id.). WRA did not remedy the problems noted in the CED Report and a court summons was issued. (Id.). On April 9, 2008, WRA plead *nolo contedere* to the charges of failure to maintain the unit free of pests, failure to remove rodent droppings and germicide, and failure to repair the exterior surface. (Id.). WRA paid $775 in fines for these three offenses. (Id.). A fourth charge of failure to secure or

---

[2] Exhibit 1 is not sequentially numbered. The cited page number refers to second page of the exhibit, inclusive of the cover page. All citations to the CED Report will be made in the same manner.

4

repair openings in the Unit to prevent the entry of rodents was dismissed. (Id.). On that same day, without notifying Daniels, Defendants moved Plaintiff into a different unit at WRA. WRA does not appear to have remedied all of the deficiencies in the Unit until April 16, 2008. (Id. at 3).

Plaintiff alleges that Defendants intentionally discriminated against Plaintiff as a result of his disability and refused to remedy the Unit's numerous problems within a reasonable time because they knew that Plaintiff's mental impairment rendered him incapable of effectively responding to their inaction. (Complaint at ¶¶ 21, 22, 26, 34, 46). Plaintiff also alleges that Defendants "engaged in retaliation and coercion, interference, intimidation and harassment" due to the complaints Plaintiff filed. (Id. at ¶ 32). Plaintiff claims that DCSB officials threatened to terminate Plaintiff's lease at a meeting held on November 9, 2007. (Id. at ¶ 51). Plaintiff alleges that Defendants took steps to antagonize Plaintiff even after being given clear instructions from Daniels to address all issues with her because Defendants' interactions with Plaintiff caused him extreme mental anxiety. (Id. at ¶¶ 43, 51, 60). Plaintiff also alleges that Defendants engaged in other forms of retaliation such as illegally charging him for a copy of his mental health records, levying a frivolous fine against him, and refusing to give him a copy of his sublease agreement. (Id. at ¶¶ 54, 58, 57, 63).

5

Plaintiff seeks relief for embarrassment, humiliation, and harm to his physical and mental health resulting from Defendants discrimination and retaliation against him and their refusal to make reasonable accommodations for his disability. (Id. at ¶ 3). Plaintiff is seeking the award of compensatory and punitive damages, as well as injunctive relief to enjoin Defendants from further discriminating against him or harassing him. (Id. at ¶¶ 91, 94).

## Discussion

### I.  Frivolity Review

Pursuant to 28 U.S.C. § 1915(e)(2)(B), "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d. 338 (1989); Carrol v. Gross, 984 F.2d 393, 393 (11th Cir. 1993).  A claim is also frivolous where the defendants are immune from suit or the claim seeks to enforce a right that clearly does not exist. Neitzke, 490 U.S. at 327.  If an affirmative defense such as a statute of limitations would defeat a claim, that

6

claim may also be frivolous. Clark v. Ga. Pardons & Parole Bd., 915 F.2d 636, 640 n.2 (11th Cir. 1990).

Plaintiff is proceeding *pro se*, so his "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) (citation omitted). Construing the Complaint liberally, Plaintiff asserts claims against Defendants for: intentional discrimination on the basis of his disability in violation of 42 U.S.C. § 3604(f)(1) and O.C.G.A § 8-3-202(a)(7)(A); failure to make reasonable accommodations to afford him an equal opportunity to use or enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(B) and O.C.G.A § 8-3-202(a)(7)(B); violation of 42 U.S.C. § 3617 and O.C.G.A § 8-3-222 by threatening and/or intimidating Plaintiff for seeking to improve his living conditions; and failure of WRA to keep the Unit in proper repair in violation of O.C.G.A. § 44-7-13.

### A. Fair Housing Act Claims

The Fair Housing Act ("FHA") allows an aggrieved party to commence a civil action within two years of the occurrence or termination of an alleged

7

AO 72A
(Rev.8/82)

discriminatory housing practice.[3] 42 U.S.C. § 3613(a)(1)(A). Acts unlawful under Sections 3604 and 3617 of the FHA constitute discriminatory housing practices. 42 U.S.C. § 3602(f). Plaintiff alleges that Defendants violated Sections 3604 and/or 3617 beginning at least as early as April 4, 2007 and continuing until April 9, 2008. Plaintiff's Complaint [2] was filed on August 10, 2009. Any violations of Sections 3604 or 3617 that occurred after August 10, 2007, or that began before that date, but terminated afterwards, fall within the statute of limitations provided by the FHA.

The FHA's stated policy is "to provide within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. Therefore, the Supreme Court has recognized that the FHA has a "broad and inclusive compass" and that its complaint-filing provision should be accorded a "generous construction." City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 731, 115 S. Ct. 1776, 131 L. Ed. 2d 801 (1995) (citation omitted). The FHA allows aggrieved persons to seek actual and punitive damages as well as injunctive relief to enjoin further violation of the Act. 42 U.S.C. § 3613(c)(1).

---

[3] A party may commence an action under the FHA regardless of the status of any complaint filed with HUD, unless a conciliation agreement has been reached. 42 U.S.C. § 3613(a)(2). A conciliation agreement was not reached following the HUD investigation and report. (Complaint at ¶ 90).

8

Plaintiff seeks damages not only for physical harm suffered, but also for his humiliation and harm to his mental health. (Complaint at ¶ 3). The Eleventh Circuit has found that "embarrassment, humiliation, and emotional distress" can constitute "significant damage[s]" stemming from violations of the FHA. HUD v. Blackwell, 908 F.2d 864, 872 (11th Cir. 1990).

The Court must approach Plaintiff's Complaint in light of the "broad and inclusive compass" of the FHA, as well as the fact that at this stage the Court is only determining whether Plaintiff's Complaint is frivolous. It is in that context that the Court now examines Plaintiff's claims.

    i.  Intentional Discrimination on the Basis of Handicap

The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter." 42 U.S.C. § 3604(f)(1). It is also unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person." 42 U.S.C. § 3604(f)(2). The phrase "to otherwise make unavailable or deny" covers activities beyond the initial rental transaction, extending to an individuals right to use of the housing free from discriminatory conduct.

9

Schroeder v. De Bertolo, 879 F. Supp. 173, 176-77 (D.P.R. 1995); see also United States v. Scott, 788 F. Supp. 1555, 1562 (D. Kan. 1992) ("The phrase to otherwise make unavailable or deny has been broadly construed to include all practices which make unavailable or deny dwellings on prohibited grounds." (citation omitted)).

Discrimination claims under the FHA are subject to the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden-shifting analysis. Massaro v. Mainlands Section 1 & 2 Civic Ass'n., Inc., 3 F.3d 1472, 1476 n.6 (11th Cir. 1993). Under that analysis:

> First, the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. Second, if the plaintiff sufficiently establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. Third, if the defendant satisfies this burden, the plaintiff has the opportunity to prove by a preponderance that the legitimate reasons asserted by the defendant are in fact mere pretext.

Blackwell, 908 F.2d at 870 (citation omitted). To prove intentional discrimination, "a plaintiff has the burden of showing that the defendants actually intended or were improperly motivated in their decision to discriminate against persons protected by the FHA." Bonasera v. City of Norcross, 342 Fed.

Appx. 581, 584, (11th Cir. 2009) (citation omitted).  Discrimination claims under the FHA may be based on disparate treatment or disparate impact. Bangerter v. Orem City Corp., 46 F.3d 1491, 1501 (10th Cir. 1995).  Plaintiff alleges that Defendants purposefully ignored his requests to remedy the deficiencies in the Unit as a result of his handicap.  Plaintiff's Complaint documents repeated communication between Daniels and Defendants in an effort to remedy the problems in the Unit to not avail.  At this stage of review, the Court cannot say that Plaintiff has failed to state a claim for intentional discrimination on the basis of his handicap.

    ii.  Failure to Make a Reasonable Accommodation.

Discrimination under the FHA on the basis of handicap includes, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped individual] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).  To prevail on a reasonable accommodation claim, a plaintiff must establish that: (1) he is disabled or handicapped within the meaning of the FHA; (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his

11

dwelling; and (4) the defendants refused to make the requested accommodation. Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218-19 (11th Cir. 2008).

Plaintiff satisfies the first element because he suffers from schizophrenia and therefore meets the FHA's definition of handicap. See 42 U.S.C. 3602(h). The requests that Plaintiff made of Defendants were that they remedy numerous problems in the Unit and that they also communicate exclusively with Daniels, who has power of attorney authority for him, concerning these problems. However, it is not clear whether Plaintiff has satisfied the third element that such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling. The types of accommodation contemplated by the FHA are those that address problems caused by a person's handicap. See Schwarz, 544 F.3d at 1226 ("If accommodations go beyond addressing these needs and start addressing problems not caused by a person's handicap, then the handicapped person would receive not an 'equal,' but rather a better opportunity to use and enjoy a dwelling . . ."). Plaintiff requested that Defendants remedy numerous problems in the Unit ranging from the presence of rats and mold to a malfunctioning air conditioning unit. It does not appear that Plaintiff asked Defendants to do anything that they would not already be required to do for a non-handicapped resident. The conditions noted in the CED Report are

12

deplorable and indicate wrongdoing on the part of WRA, however, it is not clear that their failure to properly service the Unit is a violation of the FHA.

Yet Defendants' lack of responsiveness to Plaintiff's service requests exacerbated the effects of his schizophrenia. Furthermore, if Defendants do not normally communicate with individuals other than the tenant concerning service requests, it would be an accommodation based on Plaintiff's handicap to communicate with Daniels instead. It appears from the Complaint that Defendants failed to fix the problems in the Unit and continued to address Plaintiff's complaints with him directly, causing him further stress and anxiety. Therefore, the Court does not find that Plaintiff's claim of failure to make a reasonable accommodation is frivolous.

        iii.    Retaliation.

The FHA prohibits retaliation for an individual's exercise of rights guaranteed by the Act. 42 U.S.C. § 3617. Plaintiff alleges that Defendants retaliated against Plaintiff for attempting to receive accommodations and for filing complaints with HUD and CED by threatening to terminate his lease, mentally antagonizing him, and levying frivolous fines against him. (Complaint at ¶¶ 43, 51, 54, 60). These allegations are sufficient to establish a

13

violation of the FHA's anti-retaliation provision. Therefore, this claim is not frivolous.

> B. State Claims

Plaintiff also alleges violations of sections of the Georgia Code that parallel the anti-discrimination and reasonable accommodation provisions of the FHA. See O.C.G.A. §§ 8-3-202(a)(7)(A)-(B), 8-3-222. For the same reasons stated in Sections A.i. and A.ii. above, Plaintiff's parallel state causes of action are not frivolous. Plaintiff also alleges a violation of O.C.G.A. § 44-7-13, which requires landlords to keep their premises in repair. The Complaint alleges a failure by WRA to keep the Unit in proper repair. A landlord is responsible to others for damages arising from defective construction or for damages from failure to keep the premises in repair. Oglesby v. Rutledge, 67 Ga. App. 656, 21 S.E.2d 497, 500 (1942). Plaintiff's claim against Defendants for failure to keep the premises in repair is not frivolous.

## II. Motion to Appoint Counsel [4]

The FHA authorizes the Court to appoint an attorney for an individual that alleges a discriminatory housing practice. 42 U.S.C. § 3613(b)(1). Plaintiff has submitted a Motion to Appoint Counsel [4]. That motion is **GRANTED**. The Court appoints Douglas A. Henderson and Sabrina Gardner

Fitze of the law firm Troutman Sanders, to serve as Plaintiff's attorneys in this action. Plaintiff, or Winifred A. Daniels on behalf of Plaintiff, is **DIRECTED** to contact Ms. Fitze at 404-885-3969 or Mr. Henderson at 404-885-3479 to discuss this action.

## Conclusion

Plaintiff's Motion to Appoint Counsel [4] is **GRANTED**. Plaintiff's claims are not frivolous and therefore, are **NOT DISMISSED**. However, Plaintiff's Complaint, while providing some evidence of specific conduct, frequently alleges liability on behalf of Defendants collectively.[4] Plaintiff's allegations of violations of the FHA are not frivolous, but Plaintiff needs to specify which causes of action are directed against each Defendant, and what acts are attributable to each Defendant. Plaintiff is **DIRECTED** to amend the Complaint within 30 days of the issuance of this Order to cure deficiencies in the Complaint, including: (1) clarifying the responsibilities of WRA and DCSB

---

[4] The Court is cognizant that Plaintiff is proceeding *pro se*. However, now that counsel has been appointed for Plaintiff, he is in a better position to formulate an amended complaint that avoids shotgun pleading–allegations of causes of action against multiple defendants collectively without specifying the liability or actions of each defendant. See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 367 (11thCir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.")

15

for the provision of Plaintiff's housing and associated services; specifying Marilyn McCreary's position with the DCSB; specifying which causes of action are being alleged against each Defendant; and determining whether DCSB is a state entity immune from this suit, or whether it may be properly sued under the alleged causes of action. The Court will provide further instructions concerning initial disclosures and service of process after reviewing Plaintiff's amended complaint.

**SO ORDERED**, this   8th   day of March, 2010.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)